# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

October 7, 2009

John Andrew Schruefer, Jr., Esq.
Seigel Tully and Furrer
501 Fairmount Ave. Ste. 100
Baltimore, MD 21286

Allen F. Loucks, Esq.
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201

  Re:  Natasha Renee Milbourne v. Michael J. Astrue,
    Commissioner, Social Security, Civil No. SKG-08-3359

Dear Counsel:

Plaintiff, Natasha Milbourne, by her attorney, John Andrew Schruefer, Jr., Esq. filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), pursuant to 42 U.S.C. §§ 405(g) & 1383 (c)(3), who denied her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act").

This case has been referred to the undersigned magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301. (Paper No. 8.) Currently pending before the

Court are cross motions for summary judgment. (Papers No. 23 and 24.) No hearing is necessary. Local Rule 105.6. For the reasons that follow, this Court **DENIES** the plaintiff's motion for summary judgment and **DENIES** the Commissioner's motion, but **REMANDS** the case to the Commissioner for proceedings consistent with this opinion.

## I.    Procedural History

Natasha Milbourne, plaintiff, originally filed for DIB and SSI on December 20, 2005. (R. 62-66, 304-306.) Plaintiff's applications were denied at the initial and reconsideration levels, and by an Administrative Law Judge ("ALJ") following a hearing. (R. 39-54, 300-302, 331.)  The hearing was held on May 7, 2007 before ALJ Harry Barr, who issued a written decision on June 26, 2007 determining that Ms. Milbourne was not disabled within the meaning of the Act. (R. 12-20.) Plaintiff was denied review by the Appeals Council, making the ALJ's opinion the final decision of the agency. (R. 4-7.) Plaintiff now seeks review of that decision.

## II.   Factual Background

The Court has reviewed the Government's Statement of Facts and adopts it, subject to the following supplementation and correction:

The plaintiff was 20 years old on April 1, 2005, the date that she alleges the onset of her disability. (R. 62, 304.) Her

past employment includes work as a hotel housekeeper, amusement park worker, restaurant worker, and cashier. (R.19, 335-336.)

There are three primary sources of medical evidence in this case: 1) evidence submitted by Dr. Crouch, Ms. Milbourne's treating physician; 2) evidence submitted by the State agency's medical consultant, and 3) evidence submitted by Dr. Nino, Ms. Milbourne's primary care physician.

On July 27, 2005 the plaintiff visited Dr. Michael E. Crouch; his impression of her condition was inflammatory arthritis of the hands and feet; eosinophilia with a microcytic anemia and thrombocytosis; a month of facial swelling and centripetal rash; positive ANA (homogeneous) and weakly positive rheumatoid factor. (R. 181-182.)

On November 17, 2005 plaintiff visited Dr. Crouch and reported that she was "hurting all over." (R. 178.) It was noted that she had discontinued taking Plaquenil for arthritis because it upset her stomach. (Id.)

In July of 2007, Dr. Crouch indicated that plaintiff would "occasionally" experience pain during a typical workday severe enough to interfere with the attention and concentration needed to perform work tasks. (R. 235.)

As for plaintiff's consultative examination by Dr. Khalil, he did not say that he was unsure of any reason for plaintiff's disability as the government has stated.  Rather, Dr. Khalil

3

declined to given any opinion on disability instead deferring to the rheumatologist and Dr. Crouch.  If anything, one could interpret Dr. Kahlil's remarks as confirming plaintiff's disability, but not the cause.  (See R. 174 ("As regard to this patient's disabilities, I am not quite sure of the reason for the disability at this time.")).  In any event, he did not perform a complete examination and review of systems (hands, wrists, back, etc.).

## III. ALJ Findings

In evaluating plaintiff's claim for disability, the ALJ must consider all of the evidence in the record and follow the sequential five-step evaluation process set forth in 20 C.F.R. § 416.920(a).[1] After proceeding through all five steps, the ALJ in this case concluded that the plaintiff was not disabled as defined by the Act.[2] (R. 20-21.)

The first step requires the plaintiff to prove she is not

---

[1] The Social Security regulations set forth a sequential, five-step process for evaluating a claimant's eligibility for DIB and SSI. If the agency can make a disability determination at any point in the sequential analysis, it does not review the claim further. 20 C.F.R. 1520(a).

[2] Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A) (2004).

engaged in "substantial gainful activity."[3] 20 C.F.R. §
416.920(a)(4)(I). If the ALJ finds that the plaintiff is engaged
in "substantial gainful activity," the plaintiff will not be
considered disabled. Id. ALJ Barr found that Ms. Milbourne had
not engaged in any substantial gainful activity since her alleged
onset date. (R. 14.)

At the second step, the ALJ must determine whether the
plaintiff has a severe, medically determinable impairment or a
combination of impairments that limit the plaintiff's ability to
perform basic work activities. 20 C.F.R. §§ 404.1520(c),
416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921. There is
also a durational requirement that plaintiff's impairment have
lasted or be expected to last at least twelve months. 20 C.F.R. §
416.909. Here, the ALJ found that rheumatoid arthritis and
obesity constituted severe impairments. (R. 14-15.)

At step three, the ALJ considers whether the plaintiff's
impairments, either individually or in combination, meet or equal
an impairment enumerated in the "Listing of Impairments" in 20
C.F.R. § 404, Subpart P, Appendix 1 ("Listing" or "LOI"). 20

---

[3] Substantial gainful activity is defined as "work activity that
is both substantial and gainful." 20 C.F.R. § 416.972. Work activity
is substantial if it involves doing significant physical or mental
activities and even if it is part time or if plaintiff is doing less,
being paid less, or has fewer responsibilities than when she worked
before. 20 C.F.R. § 416.972(a). Gainful work activity is the type of
work usually done for pay or profit, regardless of whether a profit is
realized. 20 C.F.R. § 416.972(b). Substantial gainful activity does
not include activities such as household tasks, taking care of
oneself, social programs, or therapy. 20 C.F.R. § 416.972(c).

C.F.R. § 416.920(a)(4)(iii). The ALJ found that Ms. Milbourne's severe impairments did not meet or equal any of the listed impairments.

Before an ALJ advances to the fourth step, he or she must assess the claimant's "residual functional capacity" ("RFC"), which is to be used at the fourth and fifth steps. 20 C.F.R. § 404.1520(a)(4)(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p. The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1520(a)(2). ALJ Barr determined that plaintiff had the RFC to perform light and sedentary work. (R. 15.) Specifically, he found that Ms. Milbourne "is capable of lifting and carrying 20 pounds occasionally, 10 pounds infrequently; sitting at least six hours out of eight and standing and/or walking six hours out of eight." (Id.)

At the fourth step, the ALJ considers whether the plaintiff retains the residual functional capacity ("RFC") to perform past relevant work.[4] 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ determined that plaintiff had not consistently engaged in past gainful activity - outside of various seasonal employment - and

---

[4] The Regulations state that "impairment(s) and any related symptoms, such as pain, may cause physical and mental limitations that affect what [one] can do in a work setting . . . residual functional capacity is the most [one] can still do despite [those] limitations." 20 C.F.R. § 404.1545.

therefore was unable to perform past relevant work. (R. 19.)

If the plaintiff is unable to resume her past relevant work, the analysis proceeds to the fifth and final step. This step requires the consideration of whether, in light of vocational factors such as age, education, work experience and RFC, the claimant is capable of other work in the national economy. See 20 C.F.R. §404.1520(f), 416.920(f). At this step, the burden of proof shifts to the agency to establish that the claimant retains the RFC to engage in an alternative job which exists in the national economy. McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The agency must prove both the claimant's capacity to perform the job and that the job is available. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983). Before the agency may conclude that claimant can perform alternative skilled or semi-skilled work, it must show that the claimant possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary. McLain, 715 F.2d at 869. Using the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ determined that based on plaintiff's RFC, and considering her age, education, and work experience, she was able to perform the full range of light work under the Guidelines. (R. 20.) Thus, the ALJ concluded that the plaintiff was not disabled. (Id.)

IV.   **Standard of Review**

The function of this Court on review is to leave the
findings of fact to the agency and to determine upon the whole
record whether the agency's decision is supported by substantial
evidence, not to try the plaintiff's claim de novo. King v.
Califano, 599 F.2d 597, 598 (4th Cir. 1979). This Court must
uphold the Commissioner's decision if it is supported by
substantial evidence and if the proper legal standards were
employed. 42 U.S.C. §§ 405(g),1383(c)(3)(2001); Craig v. Chater,
76 F. 3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F. 2d
514, 517 (4th Cir. 1987). Substantial evidence "consists of more
than a scintilla of evidence but may be somewhat less than a
preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.
1966). It is "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion..." Richardson v.
Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh
conflicting evidence, make credibility determinations, or
substitute its judgment for that of the Commissioner. Craig, 76
F.3d at 589; Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.
1990). The Commissioner, as fact finder, is responsible for
resolving conflicts in the evidence. Snyder v. Ribicoff, 307 F.2d
518, 520 (4th Cir. 1962). If the Commissioner's findings are
supported by substantial evidence, this Court is bound to accept

them. <u>Underwood v. Ribicoff</u>, 298 F.2d 850 (4th Cir. 1962).

Despite the deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987). The court is given the authority by 42 U.S.C. §405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing." <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 98 (1991).

**V.   Discussion**

On appeal, the plaintiff asserts that the ALJ: 1) failed to evaluate medical opinion evidence in accordance with SSR 96-2p and the code of federal regulations; 2) failed to set forth specific reasons justifying his finding that Ms. Milbourne's statements "concerning the intensity, persistence and limiting affects of [her] symptoms are not entirely credible;" 3) failed to properly evaluate the plaintiff's pain when determining her residual functional capacity (RFC) to perform work; and 4) improperly determined that the plaintiff retained the RFC to perform jobs existing in the national economy. (R. 17.) After careful evaluation of the record, this Court finds that the ALJ did err. Therefore, the decision of the ALJ is REMANDED for further consideration in accordance with this opinion.

### A.    The ALJ Improperly Considered the Medical Opinion Evidence

Plaintiff claims that the ALJ failed to ascribe sufficient weight to the opinion of Dr. Crouch, plaintiff's treating physician. (Paper No. 11-2, 14.) The standard for reviewing and weighing medical opinions is set forth in 20 C.F.R. § 416.927(d); the regulation clearly favors the opinions of treating physicians, stating in pertinent part:

> [W]e give more weight to opinions from your treating sources, since these sources are…most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone...If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight...We will always give good reasons...for the weight we give your treating source's opinion.

Id. (emphasis added.) Therefore, if the opinions of treating physicians are supported by medically acceptable techniques, and are not inconsistent with other substantial evidence in the record, they are given great weight.[5] See Smith v. Schweiker, 795

---

[5]On the other hand, the opinions of treating physicians do not automatically control. If the ALJ determines that the opinions are inconsistent with other substantial evidence in the record, he can reject them. The Fourth Circuit has interpreted 20 CFR § 416.927 as granting ALJs much latitude. See Craig v. Chater, 76 F.3d 585 (4th Cir. 1986)("Circuit precedent does not require that a treating physician's testimony be given controlling weight. In fact, 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) both provide, '[i]f we find that a treating source's opinion on the issues of the nature and severity of the impairments *is well supported by medically acceptable clinical and*

F.2d 343, 345-46 (4th Cir. 1986)("While the Secretary is not
bound by the opinion of a claimant's treating physician, that
opinion is entitled to great weight for it reflects an expert
judgment based on a continuing observation of the patient's
condition over a prolonged period of time. Therefore, it may be
disregarded only if there is persuasive contradictory
evidence."); Bishop v. Barnhart, 78 Fed.Appx. 265, 268 (4th Cir.
2003)("The regulations provide that a treating physician's
opinion should be granted controlling weight if it is consistent
with other substantial evidence of record.").

SSR 96-2p states that an opinion can be given controlling
weight only if it is 1) an actual opinion; 2) from a treating
source; 3) well supported by objective evidence; and 4) not
inconsistent with other substantial evidence in the case.[6] That
ruling focuses on 20 C.F.R. § 404.1527(d), which outlines the

---

*laboratory diagnostic techniques and is not inconsistent with the*
*other substantial evidence in the case record,* we will give it
controlling weight.'"")(internal citations omitted); Brewer v. Astrue,
2008 WL 4682185 *3 (E.D.N.C. Oct 21, 2008)("While an ALJ may not
reject medical evidence for no reason or for the wrong reason, an ALJ
may, under the regulations, assign no or little weight to a medical
opinion, even one from a treating source, based on the factors set
forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently
explains his rationale and if the record supports his findings.")
(internal citations omitted).In other words, the ALJ holds the
discretion to give less weight to the opinion of a treating physician
in the face of persuasive contrary evidence. See Mastro v. Apfel, 270
F.3d 171, 178 (4th Cir. 2001). In the instant case, no such persuasive
contrary evidence exists in the record.

[6] Social security rulings are not entitled to the force of law,
but are entitled to a certain amount of deference. Pass v. Chater, 65
F.3d 1200, 1204 n. 3 (4th Cir. 1995).

factors to be considered when determining whether to afford a
medical opinion controlling weight. Those factors include the
treatment relationship, length of the relationship,
supportability of the medical opinion by medical signs and
laboratory findings, the consistency of the opinion with the
record as a whole, among other facts that would support or
contradict the opinion. 20 C.F.R. § 404.1527(d). ALJ Barr failed
to comply with these regulations.

With regard to Dr. Crouch's checklist, in which he noted
that Ms. Milbourne was limited to sitting for one hour, standing
for thirty minutes, and standing and walking for two hours, ALJ
Barr observed that "there are no objective clinical, diagnostic
or laboratory findings to support this degree of limitation."
(Id.) The government argues that the ALJ simply afforded less
weight to the checklist "prepared for...disability litigation and
not as part of any treatment or referral regimen."[7] (Id.; see
also R. 234-37.) Defendant argues that only in anticipation of
litigation did Dr. Crouch opine that the claimant was "limited to
sitting for no more than one hour, standing for 30 minutes, and
standing and walking for less than 2 hours," and additionally she

---

[7] The government highlights ALJ Barr's observation that Dr.
Crouch's final opinion was issued in anticipation of litigation. The
Court finds that unpersuasive in any respect. Following that logic,
the State's medical consultants and examiners opinions and reports
were also issued in anticipation of litigation, and are equally as
suspicious.

would miss at least four days of work per month. (R. 17-18.) The
ALJ noted that those findings are inconsistent with the "overall
medical evidence of record including Dr. Crouch's own treatment
notes." (R. 176.) "Specifically, there is no support for drastic
limitations in sitting or standing, or any debility that would
result in" that degree of absenteeism. (Id.)

There is actually substantial evidence supporting Dr.
Crouch's opinion, including those findings which the ALJ wrongly
dismissed out of hand. Most importantly, under 20 C.F.R. §
404.1527(d), Dr. Crouch is the only treating physician to have
submitted evidence in this case; other doctors are only examining
physicians or non-examining experts. The ALJ chose to rely,
however, on the state agency determination of July 2006 issued by
Dr. Moore. (R. 220-227.) The ALJ was required to weigh the state
agency determination as a non-examining expert source under SSR
96-6p, and failed to do so. (Paper No. 11-2, 11.) That ruling
states that "administrative law judges and the Appeals Council
are not bound by findings made by State agency or other program
physicians and psychologists, but they may not ignore these
opinions and must explain the weight given to the opinions in
their decisions." SSR 96-6(p). The ALJ cited SSR 96-6p and stated
that "State agency determinations...are weighed as non-examining
expert sources." (R. 19.) The Fourth Circuit has opined that the
testimony of a non-examining, non-treating physician should be

discounted, especially when contradicted by other evidence in the record. Martin v. Secretary, 492 F.2d 905 (4th Cir.1974); accord Hall v. Harris, 658 F.2d 260, 266 (4th Cir.1981). ALJ Barr went on to explain that the State agency medical consultant's opinion was consistent with the overall evidence of record. (R. 19.) That determination was wrong. The evidence actually supported Dr. Crouch – the record is replete with references to diffuse joint pain, arthritis, obesity and other conditions causing severe discomfort.

The ALJ failed to consider the significant amount of evidence indicating that Ms. Milbourne continued to suffer from escalating medical problems, and continued to undergo various treatments long after the state agency determination was made. In March of 2006 Ms. Milbourne reported pain in her hands, left knee and left foot. (R. 195.) Dr. Nino noted tenderness in her fingers, knees, and hips. (Id.) He observed active synovitis[1] at Ms. Milbourne's fingers. (R. 193.) He noted that she was "still lymphomatic[2] with diffuse body aches/pain and morning stiffness.." (Id.) He switched her medicine to percocet and celebrex. In October of 2006 Dr. Crouch diagnosed claimant with

---

[1] A form of joint inflammation. Dorland's Medical Dictionary at 1879 (31st ed. 2007). Hereinafter, Dorland's.

[2] Disease of the lymph nodes, usually with swelling. Dorland's at 1098.

14

inflammatory arthritis, eosinophila,[3] and myofascial pain,[4] and
started her on Methotrexate[5]. (R. 248.) The diagnostic and vital
sign reports are included with that opinion. (Id.) From there,
Ms. Milbourne's condition declined. In April of 2007, Ms.
Milbourne weighed 274 pounds, and she complained of diffuse pain
throughout her joints. (R. 253.) In July of 2007, Dr. Crouch
reported that she suffered from newly developed muscle, or
"trigger" pain, along with clinical findings of inflammatory
arthritis, rash and Eosinophilia. (R. 234.) In August of 2007,
Ms. Milbourne was being treated with Prednisone,[6] Loratadine,
Oxycodone,[7] Diclofenac,[8] and Cymblata,[9] which treat several
arthritic, pain, allergy and anxiety related disorders. (R. 327.)
Those medications cause a number of side effects, including
drowsiness and tend to interrupt claimant's sleep patterns. (See

---

[3] Infiltrates seen as transient migratory shadows on chest
radiograph, accompanied by blood. Stedman's Medical Dictionary at 652
(28th ed. 2006). (Hereinafter, Stedman's).

[4] Pain associated with the fascia surrounding and separating
muscle tissue. Stedman's at 1272.

[5] A folic acid antagonist used to treat rheumatoid arthritis.
Dorland's at 1169.

[6] A dehydrogenated analogue of cortisone that inhibits
proliferation of lymphocytes. Stedman's at 1553.

[7] A narcotic analgesic. Stedman's at 1400.

[8] Reduces inflammation and pain related to arthritis.

[9] Treats depression, anxiety and nerve pain. Cymbalta,
www.cymbalta.com (Last visited August 28, 2009).

R. 339.) Not only is there is substantial evidence supporting Dr.
Crouch, but the ALJ chose to ignore the accumulation of physical
ailments, which manifested later than the date of the state
agency's determination.

**B. The ALJ Erred In His Conclusion That Claimant's
Statements Were Not Entirely Credible**

Plaintiff argues that the ALJ failed to set forth specific
reasons and analysis for finding that her statements regarding
the "intensity, persistence and limiting effects" of her symptoms
were not entirely credible. (Paper No. 11-2, 16.) The ALJ is
required to make credibility determinations about allegations of
pain or other nonexertional disabilities. Smith v. Schweiker, 719
F.2d 723, 725 n. 2 (4th Cir.1984). Such decisions should refer
specifically to the evidence informing the ALJ's conclusion. This
duty of explanation is always an important aspect of the
administrative charge. Hammond v. Heckler, 765 F.2d 424 (4th Cir.
1985). In making determinations of credibility, the ALJ must
consider the entire record.[10]

---

[10] SSR 96-7p states, in pertinent part:

In determining the credibility of the individual's
statements, the adjudicator must consider the entire case
record, including the objective medical evidence, the
individual's own statements about symptoms, statements and
other information provided by treating or examining
physicians or psychologists and other persons about the
symptoms and how they affect the individual, and any other
relevant evidence in the case record. An individual's
statements about the intensity and persistence of pain or
other symptoms or about the effect the symptoms have on his
or her ability to work may not be disregarded solely because

Plaintiff's allegation that the ALJ improperly evaluated her credibility is intertwined with her allegation that the ALJ failed to evaluate her complaints of pain and how that pain impacts her RFC. (Id. at 15.) It is well settled that an ALJ must follow the two-step process for assessing complaints of pain as set forth in Craig v. Chater, 76 F.3d 585,594-596 (4th Cir. 1996). See, e.g., Ketcher v. Apfel, 68 F. Supp. 2d 629, 652-653 (D. Md. 1999); Hill v. Comm'r., 49 F. Supp. 2d 865, 868 (S.D.W.Va. 1999). Under Craig, the ALJ must employ a two-part test in addressing a disability claimant's subjective symptoms. First, the ALJ examines whether the "claimant has met [his] threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed." Craig, at 595. In the instant case, the ALJ found that "the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms[.]" (R. 17.)

At the second step, the ALJ must evaluate "the intensity and persistence of the claimant's pain" and "the extent to which it

they are not substantiated by objective medical evidence.

It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."

The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

affects her ability to work." Craig, 76 F.3d at 95. Again, it is not sufficient for the ALJ "to make a single, conclusory statement" that the claimant's allegations are not credible. SSR 96-7p. In assessing the intensity and persistence of claimant's pain, claims of disabling pain may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of her pain.  20 C.F.R. §§ 416.929(c)(2); 404.1529(c)(2). However, a claimant's allegations about their pain need not be accepted to the extent that they are inconsistent with the available evidence. Craig, 76 F.3d at 595.

In the instant case, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 17.) Plaintiff argues that the ALJ did not provide specific reasons or undertake the proper analysis under SSR 96-7p and 20 C.F.R. § 404.1529(c)(3). The ALJ summarized plaintiff's testimony regarding her pain, noting that she reported "sharp, aching, stabbing pains all over her body." (R. 16) "She testified that she is unable to do anything and that she sits or lies around most of the day due to significant pain," but the "pain does not impact her ability to concentrate," read, or understand. (Id.) ALJ Barr stated that the "claimant's medically determinable impairments could reasonably be expected to produce the alleged

symptoms," but that Ms. Milbourne's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 17.) While ALJ Barr provided specific examples of plaintiff's pain, and related statements, he failed to provide specific reasons explaining why plaintiff's statements were "not entirely credible." (R. 17.)

ALJ Barr provided an overview of the medical evidence already discussed, including various medical opinions, diagnostic and laboratory findings, and other evidence of record. He concluded that "the objective medical evidence fails to support limitations that would preclude the performance of all work activity." (R. 19.) He continued, stating that "while the claimant alleges minimal activity, the medical evidence supports that she is stable and she has a good response to medication. There is no evidence to support worsening of symptoms and no indication of adverse medication side effects, which would impair her ability to work." (Id.) The record indicates exactly the opposite, as discussed above, that Ms. Milbourne's symptoms got progressively worse, and her pain continued to advance, as suggested by Dr. Crouch, her treating physician. After providing examples of Ms. Milbourne's pain and limitations, the ALJ, without providing sufficient explanation or reason, concluded that Ms. Milbourne's testimony lacked credibility.

As stated above, in assessing the intensity and persistence of claimant's pain, claims of disabling pain may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of her pain.  20 C.F.R. §§ 416.929(c)(2); 404.1529(c)(2). However, a claimant's allegations about their pain need not be accepted to the extent that they are inconsistent with the available evidence. <u>Craig</u>, 76 F.3d at 595. In other words, a claimant's statements regarding their pain are to be granted substantial consideration, and rejected where they are inconsistent with the available evidence.  Here, the available evidence supported Ms. Milbourne's testimony, and it was error for the ALJ to conclude that her testimony lacked credibility, at least without an explanation of his conclusion.

## C.  The Commissioner's Failed to Consider the Nonexertional Nature of Claimant's Pain at Step 5

At the final step, the Commissioner carries the burden of showing that a plaintiff is capable of performing jobs existing in significant numbers in the national economy. <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983). Plaintiff argues that the commissioner did not carry that burden when the ALJ failed to consider the testimony of a Vocational Expert, relying solely on the Medical-Vocational guidelines found at 20 C.F.R. pt. 404, subpt. P, appendix 2 ("the grids"). "In cases where pain occurs only upon exertion and limits one's strength functioning,

the grid tables will apply. But when a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may only serve as guidelines." Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984). In other words, the application of the grids does not require the use and consideration of vocational expert testimony in cases where the claimant suffers only from exertional impairments. See Hays v. Sullivan 907 F.2d 1453 (4th Cir. 1990); Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir.1984); Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir.1983). Any functional or environmental job requirement which is not exertional is "nonexertional." In the disability programs, a nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction. SSR 83-15.[11]

---

[11] SSR 85-15 states, in pertinent part:

A nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction. Nonexertional impairments may or may not affect a person's capacity to carry out the primary strength requirements of jobs, and they may or may not significantly narrow the range of work a person can do.

Nonexertional limitations can affect the abilities to reach; to seize, hold, grasp, or turn an object (handle); to bend the legs alone (kneel); to bend the spine alone (stoop) or bend both the spine and legs (crouch). Fine movements of small objects, such as done in much sedentary work and in certain types of more demanding work (e.g., surgery), require use of the fingers to pick, pinch, etc. Impairments of vision, speech, and hearing are nonexertional...Although some impairments may cause both exertional limitations and environmental restriction (e.g., a respiratory impairment may limit a person to light work exertion as well as contraindicate exposure to excessive dust or fumes), other

21

ALJ Barr determined that Ms. Milbourne's retained the RFC To perform light and sedentary work. (R. 15.) The definitions of the light and sedentary exertional levels appear in 20 CFR §404.1567.[12] Defendant asserts that "if a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." SSR 85-15. The ALJ also noted that "if the claimant had the residual functional capacity to perform the full

---

impairments may result in only environmental restrictions (e.g., skin allergies may only contraindicate contact with certain liquids). What is a nonexertional and extremely rare factor in one range of work (e.g., crawling in sedentary work) may become an important element in arduous work like coal mining.

[12] SSR 83-10 states, in pertinent part:

*Sedentary work*. The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.

*Light work*. The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

range of light work, considering the claimant's age, education, and work experience, a finding of 'not disabled' would be directed by" the Medical-Vocational Rules. (R. 20.) The ALJ chose not to call a vocational expert, instead relying solely on the "grids."

Pain is not necessarily an exertional impairment, however. In Walker v. Bowen, the Fourth Circuit recognized that pain can constitute a nonexertional impairment, rendering reliance solely on the grids improper. 889 F.2d 47, 49 (4th Cir. 1989). There was evidence that the plaintiff in Walker suffered from several debilitating conditions.[13] The Court stated that "in cases where pain occurs only upon exertion and limits one's strength functioning, the grid tables will apply." Id. But where there is

---

[13] The Fourth Circuit stated that:

> [T]he claimant established through medical evidence and his own testimony that he suffers from diabetes mellitus, diabetic neuropathy, background retinopathy, hypertension, seizure disorder, cirrhosis with ascites, diverticulitis, chronic dermatitis, a hiatal hernia, and degenerative joint disease. In addition, claimant has a cleft palate with a resulting speech defect and a history of pancreatitis, cellulitis, and alcohol abuse.

> The claimant testified that his diabetes has been difficult to control and that he experiences constant numbness in his hands and feet; he also suffers from leg pain and at times is unable to walk because of the pain. Further, he has a rash over much of his body and the resulting itching keeps him awake at night. He also has trouble staying awake during the day though he is not sure whether it is due to his medication or seizure condition. He vomits every morning and suffers stomach pain the rest of the day. He needs assistance in his daily household duties because of pain in his back, legs, and stomach.

> Walker, 889 F.2d at 48.

evidence showing that a claimant's pain is "sufficiently nonexertional in nature so as to preclude use of the grids as dispositive," then an ALJ should evaluate "the effect of that pain on the claimant's" RFC. Id. Here, ALJ Barr failed to consider the nonexertional nature of Ms. Milbourne's pain.  There is no suggestion that rheumatoid arthritis only causes pain during physical exertion.  Ms. Milbourne, on different occasions, stated that she "was hurting all over," (R. 178-79) complained of "pain in both hands, her left knee and her right foot, and even while on drugs suffered from body aches, pains and morning stiffness. (R. 195.) The ALJ had available at the hearing Ruth B. Rondberg, a vocational expert, but chose not to allow her to testify. This was error, because there was significant evidence establishing the nonexertional nature of Ms. Milbourne's pain. Under Social Security Ruling 83-14, where the "effects of additional limitations on the job base" are unclear, the assistance of a vocational expert is necessary. SSR 83-14. Here, it is unclear how the nonexertional nature of the claimant's pain affected her RFC to perform sedentary and light work as outlined by the grids.

Not every malady rises to the level of nonexertional impairment, so as to preclude reliance on the grids. Grant v. Schweiker, 699 F.2d 189 (4th Cir. 1983). However where, as here, there is evidence of significant nonexertional pain, the ALJ

should consider the entire record, admit testimony of vocational experts, and consider the effects of nonexertional pain on a claimant's RFC.

## Conclusion

For the reasons stated, this Court **DENIES** the plaintiff's Motion for Summary Judgment and **DENIES** the Commissioner's Motion, but **REMANDS** the case to the Commissioner for proceedings consistent with this opinion. Despite the informal nature of this letter, it constitutes an opinion of the Court, and shall be docketed accordingly.


Sincerely yours,

/s/

Susan K. Gauvey
United States Magistrate Judge